UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**ANGEL E. GASTON,**

   **Plaintiff,**

v.                                                           Case No: 5:23-cv-369-WFJ-PRL

**LAKE COUNTY, et al.,**

   **Defendants.**

_____

**ORDER**

Before the Court is Plaintiff Angel E. Gaston's Civil Rights Complaint (Doc. 1) filed under 42 U.S.C. § 1983 and 28 U.S.C. § 1367. (Doc. 1). Plaintiff, proceeding *pro se*, is currently housed in the Palm Beach County West Detention Center.

**I. Statutory Screening of Prisoner Complaints**

Pursuant to 28 U.S.C. § 1915A(a), federal courts are obligated to conduct an initial screening of certain civil suits brought by prisoners to determine whether they should proceed. Upon review, a court is required to dismiss a complaint (or any portion thereof) in the following circumstances:

> (b) Grounds for Dismissal.–On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

>   (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b). In addition, 28 U.S.C. § 1915(e) directs courts to dismiss actions which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read a plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519 (1972). Although federal courts give liberal construction to *pro se* pleadings, courts "nevertheless have required them to conform to procedural rules." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (quotation omitted).

Federal Rule Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2); *Mathew v. Paynter*, 752 F. App'x. 740, 742 (11th Cir. 2018). There is no required technical form, but "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Each separate claim should be presented in a separate numbered paragraph, with each paragraph "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b). The allegations must also "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted) (ellipses in original).

With respect to whether a complaint "fails to state a claim on which relief may be granted," § 1915(e)(2)(B)(ii) mirrors the language of Federal Rule of Civil Procedure 12(b)(6), so courts apply the same standard in both contexts. *Mitchell v. Farcass*, 112

F.3d 1483, 1490 (11th Cir. 1997); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. *Id.* (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

## II. Complaint

On August 14, 2020, Plaintiff was arrested in Lake County, Florida. (Doc. 1 at 13). During his incarceration stemming from that arrest, Plaintiff was assigned Wanda Greene, an attorney from the Office of the Public Defender, Fifth Judicial Circuit. *See id.* at 13–14. Plaintiff alleges that he was unable to communicate with Ms. Greene but was able to post bond and reported to his probation officer. *Id.* at 13. Around two-weeks later, Plaintiff was re-arrested for violating his probation out of Palm Beach County. *Id.* Plaintiff hired private counsel for the Palm Beach County case. *Id.* Plaintiff's private attorney attempted to contact Ms. Greene, but Ms. Greene "refused and/or neglected to take or return his phone calls and e-mails." *Id.* After 43 days of incarceration with no communication from Ms. Greene, Plaintiff entered a plea in the

3

Palm Beach County case and received 2 additional years of probation. *Id*. After being released from Palm Beach County, Plaintiff attempted to meet with Ms. Greene in-person, but she told him she was unavailable at that time, but she would schedule a future appointment. *Id*. at 14.

On October 27, 2020, Plaintiff was arrested in Lake County on new charges. *Id*. at 14. Plaintiff was assigned Andrew Barthelemy from the Public Defender's Office. *Id*. Plaintiff was unable to communicate with Mr. Barthelemy, did not attend a hearing on a motion to revoke bond, and disagreed with the strategy of getting a mental health evaluation. *Id*. Plaintiff claims that Mr. Barthelemy and Donna Bonifacino, an investigator from the Public Defender's Office, never came to the jail "to consult, investigate, or legally advise" him. *Id*. at 15.

Plaintiff claims that while he was housed at the Lake County Detention Center ("LCDC") he was repeatedly denied access to the law library because he had counsel. Deputy Helton advised Plaintiff that "only *pro se* detainees were permitted access to legal materials, printing, and copying; once per week for only one hour." *Id*. at 16. Deputy Helton allegedly told Plaintiff that this policy was put in place by Derick Shroth, legal counsel for the Lake County Sheriff's Department, approved by Sheriff Grinnell, and enforced by Captain Edwards and Lt. Weddle. *Id*. Plaintiff claims that he could not dismiss his counsel because he could not access the proper forms to file with the court. *Id*. at 16–17.

Plaintiff disagreed with the strategy his counsel were implementing and sent multiple filings to different judges seeking assistance. *Id.* at 17–26. In December 2021, Benjamin Ayris replaced Ms. Greene as Plaintiff's counsel. *Id.* at 26. Plaintiff claims Mr. Ayris, like Ms. Greene, refused to meet with him and failed to "form a proper defense strategy." *Id.* at 27. In February 2022, Plaintiff moved to dismiss Mr. Ayris. *Id.* at 28. In March 2022, Mr. Ayris withdrew due to a conflict of interest, and Plaintiff proceeded *pro se* with standby counsel from the Office of Criminal Conflict and Regional Counsel. *Id.*

Now proceeding *pro se*, Plaintiff sought additional time, beyond the allowed one hour a week, at the jail's law library. *Id.* at 29. Plaintiff's verbal and written grievances were denied. *Id.* In September 2022, Plaintiff "submitted a civil complaint that involved Lake County and several detention deputies to be copied" and for the first time, he was charged a copy fee of $1.00 per page. *Id.* at 33. Plaintiff claims this was in retaliation to him filing a complaint against the conditions of his confinement. *Id.*

Plaintiff further claims that he "submitted multiple motions to be heard by the Court, yet the Lake County Clerk of Court had refused and/or neglected to schedule my motions on the hearing docket." *Id.* at 35. Plaintiff claims that Gary Cooney, the Lake County Clerk of Court, had a policy for setting hearings that did "not give equal access to the Courts for me and other detainee pro-se litigants." *Id.* at 35. Due to this policy, Plaintiff claims he suffered excessive delays in accessing the Courts and his incarceration was unnecessarily extended. *Id.*

In January 2023, Deputy Knight "removed my access to legal materials as punishment for disputing and grieving her refusals to copy and mail out my legal documents to the Court." *Id*. at 36. When Plaintiff grieved this "blatent [sic] retaliation," the grievances were declared "invalid" and Deputy Knight's actions were supported by Sergeant Dolen and Lieutenant Weddle. *Id*.

On April 4, 2023, the "prosecution dropped the criminal mischief charge" and he was transported back to Palm Beach County for the violation of probation case. *Id*. Plaintiff claims he was detained for 32 months on the Lake County charge. *Id*.

### A. Defendants

In his Complaint, Plaintiff names seventeen total Defendants. The Defendants can be divided into three groups:

<u>Public Defender's Office Defendants</u> – Office of the Public Defender, Fifth Judicial Circuit; Andrew L. Barthelemy (Attorney); Wanda T. Greene (Attorney); Benjamin Ayris (Attorney); Donna Bonifacino (Investigator).

<u>Lake County Defendants</u> – Lake County; Peyton C. Grinnell (Sheriff of Lake County); Gary J. Cooney (Lake County Clerk of Court); and Derick Shroth (Attorney, Lake County Sheriff's Office).

<u>LCDC Defendants</u> – Edwards (Captain); Weddle (Lieutenant); Dolen (Sergeant); Knight (Deputy); Helton (Deputy); Malia (Deputy); Mitchell (Deputy); and Unknown Deputy #1.

### III. Analysis

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Section 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). The Eleventh Circuit has held that § 1983 claimants must allege facts to support their claims with some specificity. *Wilson v. Strong*, 156 F.3d 1131, 1135 (11th Cir. 1998).

### A. Public Defender's Office Defendants

Plaintiff sues the Public Defender's Office Defendants, alleging they provided him ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights. (Doc. 1 at 7, 13–28, 30, 32–34, 37–51). Plaintiff also brings four state tort claims against these Defendants: legal malpractice, breach of fiduciary duty, negligence, and civil conspiracy. *Id.* at 8–9. Because Plaintiff's claims are based on the performance of the Public Defender's Office in their representation of him, he fails to state a claim against them. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Holt v. Crist*, 233 F. App'x 900, 903 (11th Cir. 2007) (stating that defense attorneys are not state actors who can be held liable under § 1983). Plaintiff's § 1983 claims against the Public Defender's Office Defendants are due to be dismissed with prejudice.

7

"The dismissal of a plaintiff's underlying federal question claim does not deprive the court of supplemental jurisdiction over the remaining state law claims." *Fisher v. SP One, Ltd.*, No. 8:11-cv-1889, 2013 WL 268684, at *10 (M.D. Fla. Jan. 24, 2013) (internal quotation omitted). Instead, pursuant to 28 U.S.C. § 1367(c), "the [c]ourt has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the court has dismissed all claims over which it had original jurisdiction, but the court is not required to dismiss the case." *Id.* (citing *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997)). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett*, 117 F.3d at 1353.

Although a district court may choose to exercise supplemental jurisdiction and retain a case, "state courts, not federal courts, should be the final arbiters of state law." *Ingram v. Sch. Bd. of Miami–Dade Cnty.*, 167 F. App'x 107, 108 (11th Cir. 2006); *see also Hicks v. Moore*, 422 F.3d 1246, 1255 n. 8 (11th Cir. 2005) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.") (internal quotation and citation omitted); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

"The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney*, 370 F.3d at 1088–89. Pursuant

8

to 28 U.S.C. § 1367, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against the Public Defender's Office Defendants.

### B. Lake County Defendants

#### 1. Lake County and Sheriff Grinnell

A local government is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The official policy or custom may be established by identifying an officially promulgated policy or by identifying an unofficial policy shown by persistent and widespread practice. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). Generally, "random acts and isolated incidents" are not enough to establish municipal or governmental liability pursuant to a policy, custom, or practice. *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) (internal quotation marks omitted).

To attribute liability to Lake County and Sheriff Grinnell under § 1983, Plaintiff must demonstrate that Lake County and Sheriff Grinnell had in place an official policy or custom that was "the moving force of the constitutional violation." *Vineyard v. Cnty. of Murray*, 990 F.2d 1207, 1211 (11th Cir. 1993) (internal quotation marks omitted). With regard to Plaintiff's claims against Lake County and Sheriff Grinnell under § 1983, Plaintiff asserts, in a conclusory fashion, that the acts of the officers, agents, and employees of Lake County and/or Sheriff Grinnell were taken pursuant to an official policy, practice, or custom, but he fails to bolster his conclusion with any factual

allegations. The complaint contains nothing more than allegations of isolated wrongdoings. Accordingly, Plaintiff has failed to establish a prima facie case under § 1983 against Lake County and Sheriff Grinnell and his claims should be dismissed.

Alternately, it appears Plaintiff names Sheriff Grinnell based on the supervisory nature of his position–Lake County Sheriff–without alleging facts that he has any personal involvement in violating his constitutional rights. Public officials in supervisory positions cannot simply be held vicariously liable for the acts of their subordinates. *Robertson v. Sichel*, 127 U.S. 507 (1888); *Byrd v. Clark*, 783 F.2d 1002, 1008 (11th Cir. 1986). Nor can liability be predicated solely upon the doctrine of *respondeat superior* in a § 1983 action. *See Monell*, 436 U.S. 658; *Vineyard*, 990 F.2d 1207. If a plaintiff sues a county or county agency, there must be proof that the alleged injuries resulted from an official custom, policy, or practice. *Monell*, 436 U.S. at 694; *Mandel v. Doe*, 888 F.2d 782 (11th Cir. 1989). The plaintiff bears the burden of establishing a causal link between a government policy or custom and the injury which is alleged. *Byrd*, 783 F.2d at 1008 (citing *Monell*, supra).

Plaintiff does not allege that Sheriff Grinnell personally participated in any wrongdoing against him. As noted, above, Plaintiff has failed allege and establish a series of incidents or a pattern of misconduct necessary to establish a policy or custom. Accordingly, Plaintiff has failed to establish a prima facie case under § 1983 against Sheriff Grinnell and his claims should be dismissed.

### 2. Derick Shroth

Plaintiff names Derick Shroth, in his capacity as the legal counsel for the Lake County Sheriff's Office. (Doc. 1 at 3). Plaintiff sues Mr. Shroth for creating a policy that only allowed *pro se* detainees to visit the law library for one hour, one time a week. *Id*. at 16. Plaintiff claims that this policy deprives him access to the courts in violation of his Fourteenth Amendment.

Here, Plaintiff has failed to state a plausible access to courts claim against Mr. Shroth. Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). That right may be met "by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id*. at 828. When interpreting the right of access to courts outlined in *Bounds*, the Eleventh Circuit has held that access to additional legal material is not mandatory where legal counsel is provided as an alternative. *Smith v. Hutchins*, 426 F. App'x 785, 789 (11th Cir. 2011) (citing *Hooks v. Wainwright*, 775 F.2d 1433, 1435 (11th Cir. 1985) ("concluding state need not provide prisoners assistance of counsel in addition to libraries for purpose of filing collateral suits, stating, 'it is noteworthy that *Bounds* refers to law libraries or other forms of legal assistance, in the disjunctive, no fewer than five times.'")). Further, "[b]ecause *Bounds* addressed only the issue of access to courts in the context of inmates filing civil actions or habeas petitions for post-conviction relief, some courts have held that *Bounds* has no applicability to defendants representing themselves in criminal proceedings."[1] *Smith*, 426 F. App'x at 789 n.5.

---

[1] In *United States v. Chatman*, 584 F.2d 1358 (4th Cir. 1978), the court explained that the right of access to courts for pretrial detainees seeking assistance with a pending criminal action is

Rather, where a pretrial detainee claims that his lack of access to legal material has hindered his ability to represent himself in a pending criminal proceeding, the constitutional right of access to courts may be satisfied if the plaintiff has been provided the option of legal counsel and his decision to represent himself was voluntarily made. *Id*. at 789 (citing *Edwards v. United States*, 795 F.2d 958, 961, n. 1, 3 (11th Cir. 1986)) (stating that when counsel is offered, the alternative of other legal assistance is not mandatory, citing *Bounds*, 430 U.S. at 828); *see also Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996) (agreeing with circuits holding that a defendant who rejects court appointed counsel has no constitutional right to access a law library in preparing a *pro se* defense at trial); *Daker v. Warren*, 660 F. App'x 737, 740 (11th Cir. 2016) (reiterating that under Eleventh Circuit precedent access to a law library is not mandatory for a *pro se* defendant when counsel has been offered); *Singleton v. FS No. 7084*, No. 3:11-cv-70-J-12TEM, 2011 WL 617942, at *3 (M.D. Fla. Feb. 15, 2011) (holding there is no

---

based on the Sixth Amendment right to counsel. *Id*. at 1360. The court explained the following:
> [*Bounds*] held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. *Bounds*, of course, has no direct application to defendant. He was accused of [a] crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read *Bounds* to give an option to the [p]risoner as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that *Bounds* has any application to the instant case, the United States satisfied its obligation under the Sixth Amendment when it offered defendant the assistance of counsel which he declined. We so hold. *Cf. United States v. West*, 557 F.2d 151 (8th Cir. 1977).

12

constitutional right to access legal materials in preparing a *pro se* defense in a criminal case when counsel has been offered and the plaintiff has elected to represent himself).

Here, the Court need not decide whether *Bounds* applies to pretrial detainees or whether Plaintiff has a right to access additional legal material, because the requirements of *Bounds* are satisfied if Plaintiff has the option to receive assistance from court-appointed counsel, but he is voluntarily proceeding *pro se*. *See Smith*, 426 F. App'x at 790 n.5 ("Regardless of whether *Bounds* applies to pretrial detainees, we conclude in this case *Bounds* does not require access to a law library where Smith had the option of assistance of appointed counsel."). Plaintiff's allegations show that Plaintiff had the option to be represented by court-appointed counsel in his pending state court criminal case, but he has declined that assistance so he could represent himself. (Doc. 1 at 28).

Now, Plaintiff complains about the difficulty of obtaining legal material while housed in a pretrial detention facility although he voluntarily declined court-appointed counsel who has access to legal material. These facts do not sufficiently set forth a constitutional claim. *See Smith*, 426 F. App'x at 789–90, 790 n.5 ("[b]ecause Smith voluntarily and intelligently waived his right to counsel, Smith had no constitutional right to access ... other legal resources during his pre-trial detention" and the option of appointed counsel satisfied the requirements of *Bounds*.); *Singleton*, 2011 WL 617942, at *3 ("the offer of court-appointed counsel satisfies the state's obligation to provide meaningful access to the courts."). Thus, Plaintiff has failed to state a plausible access to courts claim against Mr. Shroth.

### 3. Gary J. Cooney

Plaintiff names Gary J. Cooney in his capacity as the Lake County Clerk of Court. (Doc. 1 at 3). Plaintiff sues Mr. Cooney due to his policy of "not providing the 'Judge's Review forms' or the 'Clerk's worksheets' to any detainee (whether pro-se or represented by counsel)" and claims his process for setting hearing dates does not give equal access to the courts for *pro se* detainee litigants. *Id*. at 34–35.

Judges are absolutely immune from civil liability under 42 U.S.C. § 1983 for any acts performed in their judicial capacity, providing such acts are not done in clear absence of all jurisdiction. *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (citing *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Simmons v. Conger*, 86 F.3d 1080, 1084–85 (11th Cir. 1996)). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Id*. (citing *Stump*, 435 U.S. at 356). Similarly, non-judicial officials, including clerks of court, are entitled to absolute immunity for "duties that are integrally related to the judicial process." *Jenkins v. Clerk of Court*, 150 F. App'x 988, 990 (11th Cir. 2005). "Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process." *Id*.

Mr. Cooney is entitled to absolute quasi-judicial immunity. The decisions related to scheduling hearings and providing Clerk-generated forms are directly related to the judicial process. Therefore, the Clerk is immune and Plaintiff has failed to state a claim.

### C. LCDC Defendants

Plaintiff sues Defendants Captain Edwards, Lt. Weddle, Sgt. Dolen, and Deputies Knight, Helton, Malia, and Mitchell for depriving him access to the courts in violation of the Fourteenth Amendment and for retaliation in violation of the First Amendment.

#### 1. Access to Courts

Plaintiff claims these Defendants violated his Fourteenth Amendment rights by enforcing LCDC's policy regarding the law library. (Doc. 1 at 51–52). As discussed, above, the policy did not violate Plaintiff's Fourteenth Amendment rights. Therefore, enforcing this policy did not violate Plaintiff's constitutional rights. Thus, Plaintiff has failed to state a plausible access to courts claim against the LCDC Defendants.

#### 2. Retaliation

Prison officials violate a prisoner's "First Amendment rights to free speech and to petition the government" by punishing that prisoner "for filing a grievance concerning the conditions of his imprisonment." *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006)). To prevail on such a claim, a plaintiff must satisfy three elements: "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Id.* (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

Plaintiff claims that Deputy Mitchell and Deputy Malia retaliated against him in violation of his First Amendment rights. (Doc. 1 at 53). Plaintiff states that prior to September 9, 2022, he had never been charged for making copies of legal documents. *Id*. at 33. However, after he submitted a civil complaint against several detention deputies, Deputy Mitchell charged Plaintiff's trust account for copying a 78-page complaint at the rate of $1.00 per page. *Id*. Roughly a month later Deputy Malia refused to make copies of Plaintiff's legal documents. *Id*. Plaintiff claims these acts were in retaliation to him naming LCDC staff members in a lawsuit. *Id*.

Next, Plaintiff claims Deputy Knight "removed my access to legal materials as punishment for disputing and grieving her refusals to copy and mail out legal documents to the Court." (Doc. 36). He further claims Sgt. Dolen and Lt. Weddle "supported her actions" by "declar[ing] my grievances invalid." *Id*.

Plaintiff's allegations against Deputies Mitchell, Malia, and Knight, accepted as true, state a claim for retaliation under the First Amendment. However, the rejection of a grievance is not an actionable adverse action for retaliation purposes.[2] Therefore, Plaintiff has failed to state a claim against Sgt. Dolen and Lt. Weddle.

---

[2] *See Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020); *Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015); *Martin v. Woodford*, 2009 WL 30300, at *6 (E.D. Cal. Jan. 6, 2009) (adopted in full Feb. 27, 2009) ("Merely by [sic] ruling against Plaintiff in a grievance procedure is not sufficient to allege an adverse action."); *Burgos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("The mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."); *Frazier v. Zavaras*, 2011 WL 4537001, at *9 (D. Colo. Sept. 30, 2011) (plaintiff's retaliation claims failed "because denial of an administrative grievance is not an 'adverse action'"); *Jenkins v. Tennessee Dept. of Corr.*, 2015 WL 1893378, at *6 (M.D. Tenn. Apr. 27, 2015) (adopted in full June 1, 2015) (improper disqualification of a third level appeal is *de*

## IV. Conclusion

Accordingly, it is hereby

**ORDERED**:

1. Plaintiff's § 1983 claims against Defendants Office of the Public Defender, Fifth Judicial Circuit, Andrew L. Barthelemy, Wanda T. Greene, Benjamin Ayris, and Donna Bonifacino are **DISMISSED with prejudice**. The Court further declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against these defendants.

2. Plaintiff's claims against Lake County, Peyton C. Grinnell, Gary J. Cooney, Derick Shroth, Captain Edwards, Lt. Weddle, Sgt. Dolen, Deputy Helton and Unknown Deputy #1 are **DISMISSED without prejudice** for failure to state a claim.

3. The claims for First Amendment retaliation against Deputies Mitchell, Malia, and Knight remain pending.

4. To the extent that Plaintiff wishes to cure the deficiencies of his Complaint, he may file an Amended Complaint on the standard Civil Rights Complaint form by **January 26, 2024**.

---

*minimis* and would not deter a prisoner of "ordinary firmness" from pursing an administrative grievance); *Stone v. Curtin*, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (failure to process grievance does not demonstrate "adverse action that would deter a person of ordinary firmness from continuing to engage in protected conduct"); *Crenshaw v. Herbert*, 445 F. Supp. 2d 301, 303 n. 1 (W.D.N.Y. 2006) (opining without deciding as a matter of law that denial of grievances would be *de minimis* and would not constitute adverse action).

**DONE** and **ORDERED** in Tampa, Florida on January 4, 2023.

    *[signature]*
    **WILLIAM F. JUNG**
    **UNITED STATES DISTRICT JUDGE**

**Copies furnished to:**
*Pro Se* Party